IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
───────────────────────────
                          :
PAMELA WINDROW ISLAM,     :      HON. JEROME B. SIMANDLE
                          :
          Plaintiff,      :      Civil No. 08-1844 (JBS/AMD)
                          :
     v.                   :
                          :            OPINION
CITY OF BRIDGETON, et al. :
                          :
          Defendants.     :
                          :
───────────────────────────
```

APPEARANCES:

William H. Buckman, Esq.
WILLIAM H. BUCKMAN LAW FIRM
110 Marter Avenue
Suite 209
Moorestown, NJ 08057
     Counsel for Plaintiff

Robert V. Fodera, Esq.
Sharon Handrock Moore, Esq.
GEBHARDT & KIEFER
1318 Route 31
P.O. Box 4001
Clinton, NJ 08809
     Counsel for Defendants City of Bridgeton and James Shrader

Elaine C. Schwartz, DAG
OFFICE OF THE ATTORNEY GENERAL
Richard J. Hughes Justice Complex
CN 114
Trenton, NJ 08625
     Counsel for Defendant Van Sant

**SIMANDLE**, District Judge:

I.   **INTRODUCTION**

       This civil rights matter is before the Court on two motions
for summary judgment pursuant to Rule 56 of the Federal Rules of
Civil Procedure filed by the Defendants James Shrader and the

City of Bridgeton [Docket Item 52], and Defendant Douglas Van Sant [Docket Item 53].  For the reasons that follow, the motions will both be denied in part and granted in part.


**II.  BACKGROUND**

    Near closing time on April 18, 2006, Plaintiff Pamela Winrow Islam entered the Motor Vehicle Commission (MVC) office in the City of Bridgeton, New Jersey, to obtain a duplicate driver's license.  Plaintiff is a Muslim, and for religious reasons was wearing a head scarf that does not cover her face.  When the time came for her photograph to be taken, a MVC employee who is not a defendant in this action ordered her to remove the head scarf. When Plaintiff would not do so, the branch manager was called in.

    A heated exchange occurred between Plaintiff and the manager, Defendant Douglas Van Sant.  Plaintiff attempted to inform Van Sant that when she renewed her license 16 years prior, she was permitted by statute to wear her head scarf in the photograph.  (Pl.'s Oct. 29, 2009 Dep. 202:8-203:13.)  According to Plaintiff, Van Sant informed her that that was before the terrorist attacks on September 11, 2001.  (Id. 207:1-12.) Plaintiff became agitated and demanded that Van Sant write his name on a piece of paper.  According to Van Sant, he advised Plaintiff that MVC policy required a signed attestation of religious faith in order to permit a photograph with a head

scarf.  (Van Sant Dep. 78:4-7.)  According to Plaintiff, no one ever told her she could have her picture taken if she signed a form affirming her religious belief.  (Pl.'s Oct. 29, 2009 Dep. 229:20-230:2.)  In fact, MVC policy did not prohibit head coverings worn for religious purposes, and the form that Defendant Van Sant claims to have provided Plaintiff to sign in order to have her picture taken with her hair covered was discontinued in the early 1990s and not replaced.  (Grill Dep. 25:20-25; 19:6-17.)

The argument continued through the closing of the office at 4:30 p.m.  MVC management generally allows customers to remain and finish their business as long as they are in the office by closing.  (Shrader Dep. 32:18-24.)  At some point, Defendant Van Sant decided he was finished conversing with Plaintiff, and motioned for the police officer stationed at the MVC to approach.

Although the MVC is a state agency, a local program uses local law enforcement for crowd control at MVC offices. Bridgeton Police Department Officer James Shrader was stationed at the MVC office.  As Shrader approached, Van Sant asked him to escort Plaintiff out of the office.  According to Van Sant, Plaintiff refused to leave the office.  (Van Sant Dep. 78:4-17.) According to Plaintiff, Van Sant never asked Plaintiff to leave or indicated that the MVC was closed, but instead said he was tired of talking to her and requested that Shrader escort her out

3

of the office.  (Pl.'s Oct. 29, 2009 Dep. 217:24-218:4.)

Depending on which version of events is accurate, Officer Shrader either unnecessarily shoved a cooperative Plaintiff toward the door even though she was already leaving (according to Plaintiff's narrative), or gently touched a defiant and resistant Plaintiff's arm to escort her to the exit (according to Defendants' narrative).  Once outside the MVC office, Shrader arrested Plaintiff.  (Shrader Dep. 56:5-25.)  Shrader signed a criminal complaint against Plaintiff for defiant trespassing, but the charges were dropped.  (Pl.'s Oct. 29, 2009 Dep. 57:18-25, 58:8-10).

Plaintiff brings five claims against Defendants.  Count I is a § 1983 claim in which Plaintiff claims her constitutional rights were violated by Van Sant.  Specifically, she claims she was falsely placed into custody by him; denied her right of expression; denied the privilege of obtaining a driver's license; denied her right to petition for redress of grievances; maliciously prosecuted; and denied due process of law.  Count II, which is not a cause of action but instead a prayer for relief, seeks injunctive relief against the MVC to prevent the MVC from stopping Plaintiff from getting a license based on her head scarf.  Count III is a § 1983 claim in which Plaintiff claims her constitutional rights were violated by Shrader.  Specifically, she claims Shrader falsely arrested her; falsely imprisoned her;

4

falsely detained her; maliciously prosecuted her; and denied her freedom of speech and right to petition government for redress of grievances.  Count IV is a claim based on New Jersey's Law Against Discrimination, based on Defendants violating "Plaintiff's right to avail herself of accommodations and/or services as a result of her religion."  And Count V is a claim under the New Jersey State Constitution against both Defendants and the Bridgeton Police Department for violation of unspecified provisions of the New Jersey Constitution.

## III.  DISCUSSION

### A.  Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Summary judgment will not be denied based on mere allegations or denials in the pleadings; instead, some evidence must be produced to support a material fact.  Fed. R. Civ. P. 56(c)(1)(A); United States v. Premises Known as 717 S. Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993).  However, the court will view any evidence in favor of the nonmoving party and extend any

reasonable favorable inferences to be drawn from that evidence to that party.  Hunt v. Cromartie, 526 U.S. 541, 552 (1999).  Where the nonmoving party bears the burden of persuasion at trial, the moving party may be entitled to summary judgment merely by showing that there is an absence of evidence to support an essential element of the nonmoving party's case.  Fed. R. Civ. P. 56(c)(1)(B); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

In this case, the operative pleading does not explain the legal theories supporting Plaintiff's claims in any depth.  For example, with respect to Plaintiff's claims under the New Jersey State Constitution, the Second Amended Complaint simply invokes the entire document without further elaboration.  Instead of moving to dismiss the pleading as insufficient, or seeking to identify Plaintiff's legal position using contention interrogatories, Defendants have instead filed this motion relying on non-controlling legal characterizations made by Plaintiff in her deposition as well as Defendants' own guesses as to the legal basis for the claims.  Much of the motion consists of Defendants applying their version of the disputed facts to their guesses about Plaintiff's legal theories.

In our adversarial system of law, there is a limit to the order that this Court can independently impose on a murky claim that reaches its summary judgment doorstep.  The Court cannot be made to shadowbox itself, simultaneously construing Plaintiff's

6

claims and then inventing what Defendants' arguments would be if they knew how Plaintiff's claims had been construed.  All the Court can properly do is evaluate the specific arguments presented to it.  Since Defendants have decided to move for summary judgment despite their confusion over the content of Plaintiff's claims, it is their burden to show that they are entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(a).  In determining whether Defendants have identified an essential element of a claim for which Plaintiff has not adduced evidence or for which the undisputed facts negate it, the Court must examine the claim the way Plaintiff presents it for this motion, so long as that legal theory is not contradicted by a reasonable reading of the Second Amended Complaint or some statement of Plaintiff's that acts as a waiver or estoppel.  Thus, for those instances in which Defendants fail to address the material elements of a given claim as explained for this motion, their motions will be denied regardless of the Court's own assessment of the sufficiency of the pleading or evidence supporting the claim.

### B.  § 1983 claims against Shrader

An individual harmed by a violation of the United States Constitution by a person acting under color of state law may bring an action under 42 U.S.C. § 1983.  The § 1983 claims

against Shrader are for false arrest (including false imprisonment and false detention), malicious prosecution, and violation of Plaintiff's free speech rights.[1]

### 1.   False Arrest and Malicious Prosecution

To state a claim for malicious prosecution under § 1983, a plaintiff must establish, among other things, that the defendant initiated a criminal proceeding without probable cause.  See Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007).  To prove a claim for false arrest, a plaintiff must prove two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause.  Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).  Probable cause is the only element of both claims that is properly challenged by Defendant Shrader on this motion.[2]

Probable cause exists when, based on the factual circumstances, a prudent person could believe that a particular suspect has committed or is committing an offense.  Sharrar v. Felsing, 128 F.3d 810, 817-18 (3d Cir. 1997).  Although probable

_____

[1]   In addition to addressing these claims, Defendant Shrader addresses a number of other claims that are not contained in the operative pleading, including an excessive force and equal protection claim.

[2]   Defendant does make mention of other elements in his reply brief, but the Court will not consider new arguments raised for the first time in a reply brief that are not made in response to Plaintiff or as an extension of issues properly raised in the moving papers.

cause is based on what that legal fiction, the "prudent person," could conclude from a set of facts, the concept attempts to account for the practical considerations of everyday life on which reasonable people, not legal technicians, act.  Illinois v. Gates, 462 U.S. 213, 231-32 (1983) (citations omitted).  Because probable cause is so fact-specific, it is not readily reduced to a neat set of legal rules.  Id. at 232.

Defendant Shrader does not address any particular crime, much less the elements of that crime, in arguing that he had probable cause to arrest and initiate charges against Plaintiff.  But since the charges were for defiant trespass, the Court takes that to be the crime for which he believes he had probable cause for arrest.  Criminal trespassing requires that Plaintiff, knowing that she was not licensed or privileged to do so, remained in the MVC, "as to which notice against trespass is given by . . . [a]ctual communication to the actor."  N.J. Stat. Ann. § 2C:18-3.

Whether Plaintiff refused to leave once asked to do so is in dispute.  Plaintiff testified that the first time she was told to go, she was already leaving, and that she never refused to leave.  (Pl.'s Oct. 29, 2009 Dep. 233:3-14, 239:12-15, 240:8-11, 243:12-244:2.)  Defendant misstates Plaintiff's deposition testimony in an effort to dispel the factual dispute over whether Plaintiff resisted leaving, by pointing to her admission that at one point

she was hollering, without also noting that this was after she had exited the MVC and after Shrader had decided to arrest her. (Def.'s Br. 17 (citing Pl.'s Dep. 44:15-25; 48:17-20).) Defendant also claims that surveillance video of the events supports his account of the events, but he failed to produce the video for this motion, relying instead on another police officer's summary of that video, which is insufficient to transform this disputed issue into an undisputed one.

Since the lynchpin fact underlying the presence of probable cause — whether a reasonable officer could have believed that Plaintiff refused to leave once her license to remain was revoked — is in dispute, summary judgment on the merits is inappropriate.

Defendant Shrader is also not entitled to summary judgment on the basis of immunity. Qualified immunity protects officer who "made a reasonable mistake about the legal constraints" on their actions. Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007) (internal quotations and citations omitted). A mistake is not reasonable when it amounts to the violation of a "clearly established" right, such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Curley, 499 F.3d at 207 (internal quotations and citations omitted). There are times when judgment can be granted on the basis of qualified immunity even when judgment on the merits is not yet appropriate because of disputed facts,

10

especially when probable cause is at issue.  This can happen when even taking a plaintiff's version of the facts as true the officer could have reasonably but incorrectly thought he had probable cause.  But this is not such a case.  In this case, if Plaintiff's testimony that she left immediately when asked is credited, then a reasonable jury could find that no reasonable officer could have thought Defendant had probable cause to arrest Plaintiff for defiant trespass.

Shrader also attempts to assert immunity from the § 1983 claims under New Jersey's Tort Claims Act, N.J. Stat. Ann. § 53:3-3, but because of the federal constitution's Supremacy Clause, that Act does not apply to federal claims.  <u>Tice v. Cramer</u>, 627 A.2d 1090, 1105 (N.J. 1993); <u>Fuchilla v. Layman</u>, 537 A.2d 652, 658 (N.J. 1988).

### 2.  First Amendment

Plaintiff's motion papers frame her First Amendment claim against Shrader as that she was arrested in retaliation for voicing her displeasure at Van Sant's conduct.[3]   The factual

---

[3]  In her deposition, Plaintiff was unable to explain how Officer Shrader violated her right to freedom of speech, and she did not know what the Complaint meant by "right to petition government for redress of grievances." (Pl.'s Dep. 73:9-12; 74:1-7.)  While it is unfortunate that Plaintiff did not understand her own complaint, the fact that Plaintiff, who is represented by counsel, is unclear about her legal theories in her deposition does not mean her well-pleaded claims are waived or abandoned.  Plaintiff's subjective awareness of how her First Amendment rights were violated is not an element of her claim.

basis for this claim is the observation that Plaintiff was
arrested shortly after loudly criticizing Van Sant, and there was
no legitimate basis for arrest under the circumstances, since
according to Plaintiff she left the MVC when asked.  To state a
First Amendment retaliation claim, a plaintiff must show (1)
constitutionally protected conduct, (2) retaliatory action
sufficient to deter a person of ordinary firmness from exercising
his constitutional rights, and (3) a causal link between the
constitutionally protected conduct and the retaliatory action.
See Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006)
(describing elements of retaliatory arrest claim).

     Of course, when speech occurs on property owned by the
government, if such property is a nonpublic forum the First
Amendment does not forbid the content-neutral exclusion of
speakers who would disrupt the function of that forum and would
hinder its effectiveness for its intended purpose.  Cornelius v.
NAACP Legal Defense and Education Fund, 473 U.S. 788, 811 (1985).
But Plaintiff is not arguing that she had a right to speak in the
MVC after she was asked to leave, or a right to "have a temper

---

In the absence of express waiver or abandonment, a deponent's
characterization or inability to explain of her legal theories
does not control.  See Windsor v. Bethesda Gen. Hosp., 523 F.2d
891, 894 (8th Cir. 1975) (finding that deponent's
characterization of discrimination claim as being limited to
retaliation did not waive other basis for claim pleaded in
complaint); Lemmons v. Georgetown University Hosp., 241 F.R.D.
15, 32 (D.D.C. 2007); McGuire v. Bourbon Community Hosp., No.
Civ.A. 04-480-KSF, 2006 WL 208826, at *3 (E.D. Ky. Jan. 25,
2006).

tantrum" as Defendant repeatedly characterizes it; rather, she contends that she voluntarily left the MVC when her license to remain was revoked by Van Sant and she was arrested because she had criticized Van Sant while she had been allowed to remain.

To the extent that Shrader addresses the retaliation claim as construed by Plaintiff, it is only to assert the disputed facts about Plaintiff's conduct and whether Shrader had cause to arrest Plaintiff to trespassing.  But these are arguments for a fact-finder, not a motion for summary judgment.  If a jury were to credit Plaintiff's version of the events, then the jury could find that Plaintiff's arrest was motivated by retaliatory animus as a result of her criticism of Van Sant, the only other obvious potential cause of the arrest.  Van Sant is not entitled to immunity from this claim for the same reason he is not entitled to immunity from the false arrest and malicious prosecution claims, namely, that whether he could be said to have been acting reasonably turns on disputed facts.

### C.  § 1983 claims against Van Sant

#### 1.  False Arrest and Malicious Prosecution

Plaintiff's theory, as elucidated by her counsel for this motion, appears to be that Van Sant ordered the arrest and prosecution of Plaintiff.  But there is no evidence for this in the record.  Moreover, Plaintiff denied that Van Sant had

13

"anything to do with anything that occurred after Mr. Shrader
took [her] out of the Motor Vehicle office."  (Pl.'s Jan. 29,
2010 Dep. 94:4-9; 97:3-6.)  Therefore, the Court will grant Van
Sant summary judgment as to the false arrest and malicious
prosecution claims.


       2.  <u>First Amendment Retaliation</u>

    Plaintiff's claim, as explicitly pleaded in the Second
Amended Complaint, is exclusively based on the First Amendment's
speech prongs.  In the motion papers, along with discussion of a
free exercise claim which is not pleaded, Plaintiff characterizes
her speech claim as being that Van Sant retaliated against her
because of her argument with him by ordering that she be
physically removed from the MVC.  (Pl.'s Br. 10.)  As explained
above, to state a First Amendment retaliation claim, a plaintiff
must show (1) constitutionally protected conduct, (2) retaliatory
action sufficient to deter a person of ordinary firmness from
exercising his constitutional rights, and (3) a causal link
between the constitutionally protected conduct and the
retaliatory action.  See Thomas, 463 F.3d at 296.  The theory
proffered by Plaintiff is that her criticism of Van Sant while
she was allowed to remain on the premises was protected speech,
and that Van Sant ordered her to be escorted from the premises
because of the content of that speech.

Van Sant's motion does not address any of these elements. Van Sant addresses a hypothetical claim that Plaintiff's First Amendment rights were violated by Van Sant preventing Plaintiff from speaking to Van Sant's superiors, or otherwise cutting off her speech, rather than addressing the retaliatory theory she proffers.  Summary judgment must therefore be denied, since Plaintiff's First Amendment claim against Van Sant rises or falls on her ability to prove the elements described in <u>Thomas</u>, a question left entirely unaddressed by Defendant's motion.  Since Defendant fails to address Plaintiff's actual First Amendment claim, the Court cannot evaluate whether Van Sant would be entitled to qualified immunity as to that claim.

### 3.  <u>Privilege of License and Due Process Claims</u>

Plaintiff chose not to oppose Defendant's motion with respect to the denial of Plaintiff's privilege of obtaining a driver's license, and with respect to her due process claim.  Van Sant's argument that Plaintiff had no constitutional right to the license and that Plaintiff has not provided the factual basis for a due process claim provide good cause for dismissing both claims, and therefore this part of the motion will be granted.

### D.  NJLAD

The New Jersey Law Against Discrimination makes it unlawful

15

"[f]or any . . . agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof . . . on account of the . . . creed . . . of such person."  N.J. Stat. Ann. § 10:5-12(f). Plaintiff claims that "The actions of Defendant Van Sant and Shrader violated Plaintiff's right to avail herself of accommodations and/or services as a result of her religion." (Am. Compl. ¶ 23.)  The elements required for a case like Plaintiff's brought under 10:5-12(f) are that the (1) defendant operates a place of public accommodation; (2) the plaintiff is a member of a protected class; and (3) he or she was denied equal treatment on the basis of his or her membership in a protected class.  Dasrath v. Continental Airlines, Inc., No. Civ.A. 02-2683 (DRD), 2006 WL 372980, at *3 (D.N.J. Feb. 16, 2006).


### 1.   Claim against Shrader

In her deposition, Plaintiff expressly abandoned her LAD claim against Shrader.  (Pl.'s Dep. 80:10-24.)  Defendant Shrader will therefore be granted summary judgment as to this claim.


### 2.   Claim against Van Sant

Van Sant asserts sovereign immunity, but Van Sant is only

joined to this suit in his individual capacity.  Personal
capacity suits are unaffected by sovereign immunity.  <u>Kentucky v.
Graham</u>, 473 U.S. 159, 165 (1985).  Van Sant also argues that
Plaintiff has failed to meet the requirement under LAD's
employment discrimination provisions, including that the
plaintiff seek and be denied reasonable accommodation for her
religious practices.  <u>See</u> N.J. Stat. Ann. § 10:5-12(q)(1).  But
this case is not brought under the employment discrimination
section of the LAD.  The elements for this case are those set
forth in <u>Dasrath</u>, above.  2006 WL 372980, at *3.

Defendant's only other argument on this motion is that there
is no evidence of intentional discrimination in the denial of
Plaintiff's license.  But it is undisputed that Defendant Van
Sant refused to allow Plaintiff to get her photo taken for her
license without removing her head covering, in violation of the
MVC policy.  And Van Sant attempted to justify this by reference
to the terrorist attacks of September 11, 2001.  According to
Plaintiff, when she made plain to Van Sant her feelings that this
comment reflected Van Sant's anti-Muslim bias, he did not take
the opportunity to explain that he was just referring to the
change in security procedures following the terrorist attacks.
(<u>Id.</u> 208:7-209:20.)  Of course, a reasonable jury may find that
Van Sant's intention in referring to the terrorist attacks
carried out by Arab Muslims was to refer to the increased

17

security precautions applicable to all Americans in the wake of those attacks.  But based on Plaintiff's account of the conversation, in particular her testimony regarding Defendant's tone and demeanor in raising the events of September 11, 2001, and the fact that he did not explain that he was referring to the general changes in security measures for all Americans, a reasonable jury might also find in that statement evidence of Defendant's unlawful animus toward Plaintiff based upon her religious beliefs.  (Pl.'s Oct. 29, 2009 Dep. 207:9-13, 209:1-9.)

Van Sant adds in his reply brief that there is no evidence that he was aware that Plaintiff was a Muslim before he improperly denied her the license photo, because Plaintiff was only wearing a black nylon stocking that did not cover all of her hair.  This purportedly material fact is not in Defendant's Statement of Material Facts and was not raised in the moving brief, denying Plaintiff notice of the need to adduce evidence for this motion to dispute it.  And, in any case, the brief identifies the source of this information as Van Sant's email to his supervisor, in which he wrote, "When she was asked to remove what appeared to be black nylon stocking from her head she refused and stated she was Muslim and it was against her religion to expose her hair in public.  I might add she had a pony tail hanging from the back."  (Pl.'s Ex. 8 "April 19, 2006 E-mail from Van Sant to Grill".)  This does not support the proposition that

Van Sant did not know Plaintiff was a Muslim before deciding to require her to remove the head covering.  Indeed, the e-mail seems to support the opposite conclusion, as it is undisputed that Plaintiff was asked to remove her head covering, and therefore announced her religious faith, before Van Sant was called over.  (Defendant Van Sant's Statement of Material Facts ¶¶ 3, 5 (citing Pl.'s October 29, 2009 Dep. 147:19-24, 149:23-24).)

Based on the evidence adduced for this motion, a reasonable jury could conclude that Van Sant was aware that Ms. Islam was a Muslim and that this knowledge was the motivation behind his decision to depart from MVC policy in requiring Plaintiff to violate her professed religious tenets in order to obtain a license.  The conclusion from the evidence that Van Sant was motivated by anti-Muslim animus and not a good faith misunderstanding of the MVC's requirements need not be the most plausible or likely conclusion from the evidence at this stage. It need only be a conclusion that the Court can reach when viewing the evidence in favor of Plaintiff and extending any reasonable favorable inferences to be drawn from that evidence to Plaintiff, as required when evaluating Defendant's motion for summary judgment.  That standard is satisfied here.

As for immunity under the Tort Claims Act, it is not clear to the Court that the Act even applies to claims under the Law

Against Discrimination.  See Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1108 (N.J. 2009) (citing Fuchilla v. Layman, 537 A.2d 652 (N.J. 1988) for the proposition that claims based on asserted violation of the LAD fall outside TCA).  The Act does not immunize an official "if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct."  R.K. v. Y.A.L.E. Schools, Inc., 621 F. Supp. 2d 188, 199-200 (D.N.J. 2008) (quoting N.J. Stat. Ann. § 59:3-14).  But, even if the Act were to apply, Defendant has not adduced any evidence to show that he is protected by the law's provision of immunity for those who are "authorized by law to determine whether or not [licenses] should be issued, denied, suspended or revoked," N.J. Stat. Ann. § 59:3-6, since it is not clear that Van Sant is authorized by law to exercise any such discretion as an MVC branch manager.

In summary, Defendant Van Sant may not invoke sovereign immunity as he is being sued in his personal capacity.  Nor does Plaintiff need to have requested an accommodation.  Plaintiff adduces sufficient evidence of discriminatory intent based upon animus against her Muslim faith to present a triable issue of fact, and Defendant has not shown that he is entitled to immunity under the TCA.  Since this is Defendant's motion, and Defendant does not make any other arguments, the Court does not reach any other issues with respect to this claim.

**E.  State Constitution**

The Second Amended Complaint does not identify what portions of the New Jersey Constitution Plaintiff alleges were violated by Defendants.  Since neither side identifies some difference between how the state and federal claims would be analyzed, there is no need for a separate analysis of these claims.  The only facially obvious distinction would lie in the body of law regarding immunity, but the Tort Claims Act does not grant public employees immunity from suits under rights of action provided by the New Jersey Constitution, nor from suits under the NJCRA. Owens v. Feigin, 947 A.2d 653 (N.J. 2008) (holding that the NJTCA does not apply to the NJCRA); Garlanger v. Verbeke, 223 F. Supp. 2d 596, 604 (D.N.J. 2002).

**F.  Municipal Liability for City of Bridgeton**

Plaintiff fails to explain why the City of Bridgeton should be held responsible for the acts of either Defendants under Counts III and V, except to say that the Second Amended Complaint's vague reference to the New Jersey Constitution implies reference to specific provisions.[4]  Plaintiff also fails

---

[4]  The Second Amended Complaint names the City of Bridgeton as a Defendant, but in the allegations refers only to the Bridgeton Police Department.  Defendant follows this convention. Since the parties assume the two entities are interchangeable, the Court will follow suit.

21

to make any reference to the source of Plaintiff's private right of action under the state constitution.

Both a § 1983 claim and a claim under New Jersey's Civil Rights Act require more than respondeat superior to hold a municipality liable.  See Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 691 (1978); Hudgon v. LaFleur, Civil No. 07-3626 (RBK-AMD), 2010 WL 2950004, at *7 n.6 (D.N.J. July 22, 2010) (applying Monell to claims under the New Jersey Constitution).  The City of Bridgeton will therefore be granted summary judgment as to all claims against it.


### G.  State Law Injunctive Relief

Van Sant argues, correctly and without opposition, that to the extent the relief is sought under state law, sovereign immunity forbids this Court from enjoining a state official's official conduct.  Pennhurst State Sch. & Hosp. v. Halerman, 465 U.S. 89, 121 (1983).  Thus, Van Sant will be granted summary judgment as to any injunctive relief sought by Plaintiff pursuant to state law.


## IV.  CONCLUSION

Defendant Shrader has shown that he is entitled to summary judgment with respect to Plaintiff's Law Against Discrimination claim against him, but not as to any of Plaintiff's other claims.

The City of Bridgeton has shown that it is entitled to summary judgment as to all claims against it.  And Defendant Van Sant has shown that he is entitled to summary judgment with respect to Plaintiff's false arrest, malicious prosecution, due process, and right to a license claims, as well as Plaintiff's claim for injunctive relief under state law, but not as to Plaintiff's First Amendment claim (and any injunctive relief justified by it) or her Law Against Discrimination claim.

The accompanying Order will be entered.[5]


**March 28, 2011**                          **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                        United States District Judge

---

[5] Counsel for the remaining parties shall appear for their Final Pretrial Conference before the Honorable Ann Marie Donio, U.S.M.J., on April 18, 2011 at noon, and they should anticipate a May 2011 jury trial before the undersigned.

23